Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. This is Judge Bill Pryor. Thank you for all being here this morning in this unusual circumstance of conducting oral arguments by telephone. It's a practice, though, that has been working pretty well for us over the last few weeks and we have some important cases to hear this morning. Judge Grant and I are very pleased to welcome our new colleague from the Middle District of Florida. I say new, relatively new colleague from the Middle District of Florida, Judge Bill Jung. Our court has long had a practice of inviting district judges within our circuit to sit with us soon after they become district judges. It is a practice that I think we will continue for many years to come and we appreciate you being with us, Judge Jung, and agreeing to assist us in our work this week in addition to your regular duties. Judge Jung is not a stranger, though, to the 11th Circuit. He started his career as a law clerk to the great Judge Jerry Choflat, so thank you for being with us, Judge Jung. Thank you. Our first case this morning is Ms. Kemp. Yes, Your Honor. Are you ready? I am, Your Honor. You may begin. May it please the Court. Section 404 of the First Step Act is a broad remedial action passed by Congress to reach all federal crack defendants convicted and sentenced during the two decades that the 100-to-1 crack-to-powder cocaine disparity resulted in unjust, racially disparate sentences. The First Step Act ensures those defendants one chance at having a district court review their cases. The district court in this case found Mr. Jones was ineligible under 404A of the Act because he was charged with a mixture of both powder and crack and because the statutory penalties currently applicable to him under 841B1C were not affected by the Fair Sentencing Act. But Mr. Jones is eligible to have his sentence reviewed because he was convicted and sentenced for crack offenses under 841A1 and his penalties were set by B1A and his sentence was entirely by the crack. Since the general jury verdict in his case did not indicate whether he was found guilty of crack, powder, or both, under U.S. v. Allen, the district court can only rely on the jury's verdict of guilt for the crack since it has the lowest statutory maximum penalty and none of the limitations in 404C apply to Mr. Jones. 404C also does not prohibit eligibility for people like him with mixed drug offenses and it doesn't tie eligibility to any relevant conduct drug amount. Also, the district court erred when it found that the Fair Sentencing Act did not modify B1C. The drug quantity in B1C is tied to the quantity in 841B1B. Thus, when the Fair Sentencing Act raised the drug quantity in B1B from 5 to 28 grams, the drug quantity in B1C was also raised from 0 to 5 grams to 0 to 28 grams. So now the 0 to 28 triggers the 0 to 20 year sentence. All right, so the district court found at his original sentencing that Mr. Jones was responsible for at least 75 kilograms of crack cocaine, right? Yes, your honor. And as I understand it, what the district court said was the statutory range for that offense with that drug quantity finding, which was a drug quantity finding made for not just guideline purposes but for statutory sentencing purposes, did not change anything with respect to the penalties that would have applied to him if the Fair Sentencing Act had been in effect at the time. Yes, your honor. That is what the district court found. Yeah, and so the real question is if the first step back in no way suggests that there's a revisitation of those drug quantity findings, that everything else basically remains the same. The question is whether the penalties that were changed by the Fair Sentencing Act, if they had been available, if that had been the statutory penalty framework at the original sentencing, would it have made a difference? If that's the way it works, it wouldn't have made a difference, would it? Well, I think the way that the Fair Sentencing Act works is you have a two-step process. The court determines eligibility under 404A, and that is just a categorical question. So the categorical question under 404A looks only to the nature of the underlying statute of conviction. So if he was convicted of a statute that was modified by the Fair Sentencing Act, he is eligible to have his case reviewed. But then you go to the next section, and the next ink spilled or a lot of pages devoted to who's eligible under that first step. But it seems to me that when you get to the next step, and the question is, would, if you were to sentence this defendant as if the relevant sections of the Fair Sentencing Act were in effect, that really the debate about who's eligible under that first step becomes almost academic if your statutory penalties didn't change. Yes, Your Honor, I have a few responses to that. First, in Mr. Jones' case, the court never got to the second step. The court found that he wasn't eligible and then didn't go any further than that. Also, I think when you get to the second step, the statute 404B says that the court is allowed to impose a reduced sentence today. It has to impose that sentence based on the current constitutional requirements. And so when looking back as if, the as if language is only there to make the statute retroactive and so that the court can apply it. And so when looking in this particular case, when the court looks back, it's still going to be constrained by what the jury found in this case. And in Mr. Jones' case, the jury did not make any drug finding. So Mr. Jones, if he were to have his statutory penalties reviewed today, he would fall under B1C. Because the jury didn't make any drug finding, his new statutory penalty is now zero to 20 years, which is a change from what it was before under B1A. I don't understand what in the act suggests that the application, the retroactive application of the Fair Sentencing Act would suggest. What in the text of the act would suggest that we're to revisit a drug quantity finding that was made for purposes of sentencing by a judge back then, we now know that should have been made by a jury, that we would revisit that determination by the language of the Fair Sentencing Act or by the First Step Act? Your Honor, I believe the language of the statute does not limit the court from applying what is as if language doesn't require the court to simply plug in the Fair Sentencing Act statutory penalties and leave everything else. There's not a constitutional problem with a look back for someone who has already been sentenced, who is being considered for a reduction of sentence, when the drug quantity finding can't be used to increase that defendant's punishment, the punishment he's already received. The only purpose that it can be used for is reducing his punishment. So there's not a constitutional problem, a Sixth Amendment problem in this context, is there? Your Honor, I believe that there is, because if the court were to base the current statutory penalties on what the judge found, that would be a constitutional violation, because you cannot determine statutory penalties. No, that's already happened. That's already happened. That's not something that's going to happen in this proceeding. The drug quantity finding was already made. The defendant was already sentenced based on that. We know Apprendi and, you know, that line of authority is not retroactive on collateral review. And so that's behind us, isn't it? Well, respectfully, Your Honor, I would disagree. This is not a collateral review case. This is a statutory remedy that Congress has passed. So it's giving Mr. Jones an independent remedy and an independent opportunity to have individualized review of his case on the merits. Is there anything in this statute that could make Mr. Jones' sentence higher than it already is? I believe that if the court were to allow the district court to rely on the judge findings, then—and those judge findings clearly differ from what the jury found—then his statutory penalty would be higher than what was justified by the jury finding. But could it be higher than his current sentence? I think that's pretty clearly no, correct? Because the court is allowed here to impose a reduced sentence. Correct, Your Honor. Right. Under 4.4.b. Yes, Your Honor. So why would Apprendi have any import here where Apprendi blocks a higher sentence based on a judge-made finding? It certainly doesn't block a reduced sentence. Because I— Hopefully, you have two minutes remaining. Yes. All of the district courts that have—the majority of district courts that have addressed this issue have found that the court cannot ignore that even at the time that Mr. Jones was sentenced, it was not constitutional for the court to set his statutory penalties based on what the judge found. So those statutory penalties have to be based on what the jury found. And also, with particular to Mr. Jones, Mr. Jones' case never got to this stage. His—he never even got any type of initial review because the court just said, well, he's not eligible under 4.4.a. So what we're asking— In the follow-up to Judge Pryor's question from earlier, let's say that he did, under your interpretation of covered offense, get to Step 2. What good did that do him if Step 2 doesn't end up applying to him anyway because the penalties for the particular quantity that he was found to have been liable for, if those penalties haven't changed, what good does that do you to get to Step 2? Well, I believe that the penalties have changed for Mr. Jones, that he is no longer under B.1.a. He's now under B.1.c. Because his statutory penalties must be set by what the jury verdict found in his case that puts him under B.1.c. And so his maximum sentence now would be 20 years and not life. So I believe that if he were to get to the discretionary stage, that it would be a benefit to him because his statutory penalties are lowered. I'm sorry, I didn't hear— Do you have another question, Judge Graham? No, that's all right. I can leave it. Thanks. Judge Jones, do you have any questions? No, sir. Okay. You've saved time for rebuttal. Mr. Gray? Yes, Your Honor. You may begin. Thank you, and may it please the Court. In this appeal, the Court must decide what benchmark district courts should use to determine eligibility for a discretionary sentence reduction under Section 404 of the First Step Act. The United States contends that district courts should consider eligibility in the light of the quantity that the sentencing court actually found under the procedures in place at the time of sentencing. Section 404 is not the broad and its discrete purpose indicate that it serves a narrow function, namely to give a second look for certain defendants whose sentences were affected by the change or would have been affected, I should say, by the change in quantity thresholds brought about by the Fair Sentencing Act in 2010. Notably, each subsection in 404—Section 404a, Section 404b, and Section 404c—are tied to the Fair Sentencing Act of 2010. And the Fair Sentencing Act of 2010 changed certain quantity thresholds for crack cocaine offenses. Nothing else. It did not change how offenses must be pleaded in an indictment, proven at trial, or how quantities may be established for purposes of penalties at sentencing. And the critical operative section in Section 404 is Section 404b, which provides that a district court may impose a reduced sentence to certain defendants, quote, as if Sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed. There are two qualifications there in terms of scope of relief. The first is as if, meaning that the sentence is evaluated through the lens of the Fair Sentencing Act of 2010. And then, at the time, meaning that that look occurs at the time the offense was actually committed, meaning that all other sentencing decisions at that time remain unchanged. Now, I think there's a discussion— Or at least not suggesting that anything else is different. Yes, Your Honor. I mean, it's not—I don't know that it really directly speaks to it, but it just does not suggest that there's anything else that the court should assume has changed. Wouldn't that be a better way of looking at it? So, Your Honor, I think you can look at it both ways. I would suggest that the language actually is clear by saying that you look at the Fair Sentencing Act as though it were in effect at the time the offense was committed, meaning that you look at it at the time of the offense and at the time of sentencing. Your Honor, I think you can also look at it just as strongly, if not more so, by looking at what the statute does not say. And it is certainly true that neither the Fair Sentencing Act nor the First Step Act provides for de novo resentencing. It provides no procedures for recalculation of drug quantity. And, critically, it certainly does not bear any of the hallmarks of being a substitute for habeas relief, for collateral review. Notably, Jones acknowledges that this is not a collateral review case, and that's consequential because the First Step Act is not a collateral review statute, meaning it's not a substitute for litigation under 28 U.S. Code Section 2255 for federal defendants. Indeed— Yeah, we know that if they had collateral review, that the decisions that would make a jury's finding of the drug quantity necessary are not retroactive. Yes, Your Honor. Indeed, Jones actually moved at one point for relief on that basis and could not obtain it. And that's an important point, namely that Apprendi and Alene are not applicable here. This Court's decision, whatever decision it makes, ought to be grounded in the text of Section 404 and the purposes it serves. Apprendi and Alene are decisions that apply to initial sentencing decisions, and they do not apply to motions for a sentence reduction like this one. There is, simply put, nothing that could increase Jones's sentence at this point. The only question before the district court was, should this defendant receive a sentence reduction under the terms of Section 404? And put into the parlance of the statute, the district court found that he was ineligible because Jones was responsible for 75 kilograms of crack cocaine at the time of his sentencing. Therefore, there was no basis for which he could receive a reduction as if the Fair Sentencing Act were in effect at the time he committed his offense. He certainly would have been subject to the highest range of statutory penalties in 21 U.S. Code Section 841. Well, tell me this. There's been a lot of debate about whether someone's eligible under Subsection A versus what happens with respect to Subsection B for someone who has been determined to be eligible for consideration. Does it really matter all that much when, at the end of the day, if a defendant has been determined to be eligible, if we determine just what you were outlining, that this is a defendant for whom the statutory penalties would not have changed under the Fair Sentencing Act, and therefore should not receive a reduced sentence under B, whether they were eligible under A really is more, to me at least, an academic question. Am I wrong? So, Your Honor, I think that's right, although I also don't want to be passive about what Section 404A means. Section 404A reinforces what Section 404B means, which is, simply put, there is no basis to revisit the drug quantity established at sentencing. The term covered offense means a violation of a federal criminal statute, the statutory penalties for which were modified by the Fair Sentencing Act. First, the use of the term violation is notable and it is broad to encompass the defendant's conduct. Moreover, the decisions that have relied on sort of this clause at the end, the statutory penalties for which were modified by Section 203 of the Fair Sentencing Act, those decisions have several problems. One is the of a federal criminal statute is certainly a phrase that continues to modify violation. And simply put, what the Fair Sentencing Act did was it did change the framework for violations, meaning it increased the quantity thresholds without saying anything about how those quantity thresholds must be established. And so, and moreover, as Your Honor noted with respect to or re-evaluate what this offense, or re-evaluate the sentencing decision, but this section is also remarkable for what... I think to me that one of the arguments, the most powerful argument maybe against that position, that reading of Subsection A was Judge Smith's opinion for the Fifth Circuit where he said, look, if your focus is on the violation, because that violation was committed before the Fair Sentencing Act, weren't modified by the Fair Sentencing Act at all. And that's a reason to read the Penalties Clause as modifying the statute, not the violation. But it seems to me at the end of the day, it doesn't really matter if you look at the defendant and determine that this Sections 2 and 3 of the Fair Sentencing Act didn't change a statutory penalty. Your Honor, I have a couple of responses to that question. I would like to begin with sort of the back part, which is that I agree ultimately that the statute should be read as a whole. And when 404A and 404B are read together, it provides no basis for setting aside drug quantity. It entails a simple calculation where the Fair Sentencing Act is the new lens that evaluates the defendant's actions as they stood at the time of the offense. I would also suggest that the Fair Sentencing Act did modify violations moving forward, and that what 404 really means is that the violation was of a character of those offenses or of that conduct, I should say, that was modified by the Fair Sentencing Act, then with the last clause that was committed before August 3, 2010. Therefore, the violation is of a flavor that the Fair Sentencing Act modified, but it was committed before August 3, 2010, meaning that the defendant likely was not applicable. And if the defendant fell within the who was entitled to the Fair Sentencing Act, Section 404C steps in to say those defendants who already received the full benefit of the Fair Sentencing Act are ineligible. And that part, the way those statutes interplay actually suggest that Congress was focused on correcting a specific disparity, namely the changes in quantity that occurred under the Fair Sentencing Act, under the statute, and that Congress was not intending a broad remedial action to attempt a sort of post hoc second look at sentencing. Indeed, that's flatly inconsistent with Section 404B, which talks about that it was in effect at the time the covered offense was committed. That interpretation also would create two absurd results that I wanted to be sure to control substances defendants. Those defendants are stuck with the drug quantity findings that they had at sentencing. And there's nothing in the First Step Act in Section 404 or in the Fair Sentencing Act that suggests that Congress was intending to allow these defendants to step on a plane above other defendants. Instead, it was to remedy a particular disparity. The other challenge with this approach is that it would place older crack cocaine defendants on a plane above newer crack cocaine defendants, more recent crack cocaine defendants who were sentenced and charged under the procedures and circumstances as they would apply under current law. There's absolutely no indication that Congress intended for a defendant like Jones, who was responsible for vast quantities of both powder and crack cocaine, to be able to revisit his sentence in a holistic manner. Instead, Jones should be subject to the quantity that was both found at sentencing and reinforced in the subsequent post-sentencing briefing in this case, where he has sought various sentence reduction motions in the past and had those denied. Moreover, this court also should evaluate Section 404 through the lens of Section 3582, 18 U.S. Code Section 3582, which provides a strong interest in the finality of criminal judgments. Meaning, while Section 404 creates an exception to that finality interest as allowed by statute, that should be construed narrowly and carefully to give effect to Congress's limited intent. In that vein, decisions like the Supreme Court's decision in Dillon, which we cited in our brief, are particularly instructive here. Dillon addressed Section 3582c2, which deals with and allowing district courts to rely on judge-found facts and concluding that that doesn't create Sixth Amendment concerns. I certainly read in Dillon an interest in allowing sentencing courts to consider judge-found facts for purposes of a sentence reduction. And at the end of the day, that's what this is. It is a motion for a sentence reduction. Although Jones asserts that he does not seek plenary re-sentencing or he does not seek review of his sentence, ultimately what Jones wants is collateral review or re-sentencing by another name, meaning he wants the district court to simply evaluate these issues through a written motion. That's not what Congress... It's even more than that. I mean, it's really de novo re-sentencing, isn't it? Yes, Your Honor. Now, Jones admits in his reply that he's not seeking a full-scale de novo re-sentencing. He suggested perhaps, but ultimately that's what he seeks. And not only does he seek a de novo re-sentencing, he seems to seek a re-sentencing that considers only those factors in the record that diminish his quantity and that become further and further detached from what the record actually showed. For example, while Jones cites the indictment in his case, he also looks at the jury instructions in his case. However, he would preclude a district judge from being able to fully consider and fully evaluate the quantities for which he was responsible. And ultimately, what judges should be able to do with First Step Act motions is to evaluate the full sentencing record and determine what that record establishes. Therefore, the district court correctly concluded that Jones was ineligible under the First Step Act. The district court's decision should be and I would yield the remainder of my time unless the panel has further questions for me. Well, I don't hear any more questions. So, Ms. Kemp, you've saved two minutes for rebuttal. Yes, Your Honor. Very quickly, the windfall or the disparity arguments and all of the arguments that the government has made, they have been, all of the district courts that have looked at these cases have rejected the government's entire position. There is no similarity between the First Step Act and 3582C2. All of the courts agree and even the district court in this case agree that the First Step Act falls under C1B, not C2. And for that same reason, the Dillon case doesn't apply here. There's nothing in the text of the First Step Act in any of the sections that ties eligibility to any relevant conduct drug amount. So, eligibility is totally unrelated to drug amounts. And as far as the purpose of the First Step Act, the purpose is a broad purpose to give crack offenders one chance at individualized review on the merits. And when you look at the background that came before the passage of the First Step Act, it's clear that Congress intended to reach back and look to all of those crack cases sentenced under that 101 disparity that were not previously eligible for any type of review under the changes to the guideline amendments. And as far as putting these crack defendants above other crack defendants, that again I think is a policy disagreement that the government has that doesn't invalidate the law or allow the court to interpret the statute that's contrary to what the language of the statute says. And there's no way that someone like Mr. Jones would be above someone who's sentenced today because in 1994, Mr. Jones was sentenced under mandatory guidelines. It only took 50 grams of crack for a life sentence. There's no way that he would have been able to argue for a downward variance. So, it's clear that somebody like Mr. Jones, just by getting the opportunity to have one look at his case, is not getting any type of other crack defendants being sentenced today because the sentencing schemes were completely different. So, you know, I think that looking back at what the district court did in this case, Mr. Jones never got his one opportunity to have his case reviewed. And considering that the purpose of the First Step Act is to reach back and give one look at all of these sentences that were under the racially disparate 100 to 1 sentencing scheme is not placing them above anyone else. So, the district court erred as a matter of law and improperly prevented Mr. Jones from getting his one chance at sentencing review. And all we're asking this court to do is to give Mr. Jones that one opportunity. Thank you, Ms. Kim. We have your case and